UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL RODRIGUEZ-GARCIA, | No. 2:23-cv-0849-TLN-SCR (HC) |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| WARDEN, FCI-HERLONG, | |
| Respondent. | |

Petitioner is incarcerated in Bureau of Prisons ("BOP") custody and representing himself in this habeas corpus action filed pursuant to 28 U.S.C. § 2241. Pending before the court is respondent's renewed motion to dismiss.[1] ECF Nos. 18, 22. Petitioner has not opposed the motion to dismiss and the time to do so has expired. For the reasons explained below, the undersigned recommends denying petitioner's § 2241 application on the merits.

**I.      Factual and Procedural History**

Petitioner serving a 135-month federal sentence pursuant to a guilty plea to possession with the intent to distribute methamphetamine and illegal reentry.[2] See United States v.

---

[1] In light of the court's April 18, 2025 order that required respondents to file a response on the merits of the § 2241 petition along with "any relevant parts of the record," the court also construes respondent's renewed motion to dismiss as an answer. See ECF No. 15 at 2.
[2] A court may take judicial notice of its own records in other cases. See United States v. Wilson, 631 F.2d 118, 119 (9th Cir.1980).

1

Rodriguez-Garcia, No. 1:16-cr-00067-LJO-SKO-1, ECF No. 26 (E.D. Cal.).  On April 28, 2023, petitioner, who is presently confined at FCI-Herlong, filed a habeas corpus petition initiating this action.  ECF No. 1.  Petitioner seeks an order requiring the BOP to apply his earned time credits pursuant to the First Step Act of 2018 ("FSA") to advance his release date.  ECF No. 1 at 3.  Specifically, petitioner submits that he is entitled to an additional 365 days of earned time credits ("ETCs") which have not been so applied.  ECF No. 1 at 2.  Absent these earned time credits, petitioner's projected release date according to BOP records is November 23, 2025.  ECF No. 1 at 2.  Despite BOP documents indicating that petitioner is subject to an immigration detainer, petitioner also indicates that he is not subject to any final order of deportation that would prevent him from being eligible to receive these FSA time credits.  See ECF No. 1 at 7 (BOP Individualized Needs Plan indicating that petitioner had a detainer lodged against him by Immigration and Customs Enforcement ("ICE") based on his "possible deportation").  According to BOP's current Program Statement regarding ETCs, petitioner submits that he is eligible to receive FSA time credits and BOP should be ordered to apply them to petitioner's sentence.

In the renewed motion to dismiss, respondent argues that petitioner did not fully exhaust his administrative remedies within BOP prior to filing his § 2241 petition because he did not file a complaint at all three levels of review.[3]  ECF No. 11 at 4-5.  Respondent also asserts that petitioner is barred from receiving FSA time credits, he lacks standing, and he fails to state a claim all because he is subject to an order of removal issued by ICE.  ECF No. 11-1 at 3.

In support of these contentions, respondent submitted documentation stating that petitioner entered the United States on February 15, 2006 and was ordered removed by an immigration judge on April 26, 2006.  ECF No. 24-1 at 2-3.  He was removed to Mexico on the same day as this final order of removal.  ECF No. 24-1 at 3-4.  Petitioner subsequently reentered the United States and was again removed on January 22, 2014.  ECF No. 24-1 at 5.  He reentered the county again on or about February 1, 2014.  Id.  The Department of Homeland Security

---

[3] In light of the court's prior ruling that excused the exhaustion of administrative remedies due to petitioner's impending release date, it is unnecessary to rehash respondent's argument.  See ECF No. 14 at 4-5; ECF No. 15 (adopting Findings and Recommendations in full).

("DHS") reinstated his 2006 order of removal on February 1, 2014 and entered a Warrant of Removal/Deportation for petitioner the same day. ECF No. 24-1 at 5-6. Petitioner was removed again on May 1, 2014. ECF No. 24-1 at 7. He reentered the United States on an unknown date and committed the criminal offenses for which he was subsequently convicted in this district on April 24, 2016. See United States v. Rodriguez-Garcia, No. 1:16-cr-00067-LJO-SKO-1 (E.D. Cal.), ECF No. 1 (Criminal Complaint). The next day, on April 25, 2016, the Department of Homeland Security rendered a Decision to Reinstate his 2006 Removal Order (the "2016 Reinstated Order"). ECF No. 24-1 at 1. This 2016 Reinstated Order has not been executed as petitioner has been in criminal custody since the date it was issued. Id.

Petitioner has not filed an opposition to respondent's renewed motion to dismiss, and the time to do so has expired.

## II.     Legal Standards

### A.     Section 2241 Jurisdiction

A federal inmate challenging the manner, location, or conditions involved in the execution of their sentence, may file a habeas corpus petition pursuant to 28 U.S.C. § 2241. Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000) (per curiam). Jurisdiction over a § 2241 petition lies in the district of the prisoner's confinement. Hernandez, 204 F.3d at 864. Petitioner's challenge to the computation of his sentence by the BOP is properly raised in a § 2241 petition since it challenges the manner in which his sentence is being executed. See Zavala v. Ives, 785 F.3d 367, 370 n.3 (9th Cir. 2015).

### B.     First Step Act

The FSA made several important changes to the duration of federal prison sentences. See Pub. L. No. 115-391, 132 Stat. 5194. As relevant to the pending habeas petition, it created an evidence-based recidivism reduction ("EBRR") program that incentivizes incarcerated people to participate in and complete programs and productive activities ("PAs") by awarding them "10 days of time credits for every 30 days of successful participation[,]" with "an additional 5 days of time credits for every 30 days of successful participation" for those classified as a minimum or low risk of recidivism. 18 U.S.C. § 3632(d)(4). The BOP implemented its final agency rules

regarding the earning and awarding of ETCs under the FSA on January 19, 2022. See 28 C.F.R. §§ 523.40 et seq. On February 6, 2023, the BOP issued Change Notice 5410.01 CN-1 which no longer categorically prohibited federal prisoners with immigration detainers from having FSA earned time credits applied to their sentences. See Alatorre v. Derr, No. CV 22-00516 JMS-WRP, 2023 WL 2599546, at *5 (D. Haw. Mar. 22, 2023) (explaining effect of Change Notice 5040.01 CN-1). Only prisoners with a final order of removal are prohibited from earning time credits under the FSA. See 18 U.S.C. § 3632(d)(4)(E)(i) (excluding a prisoner who "is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17)").

### III. Analysis

The dispositive legal issue before the court is whether the 2016 Reinstatement Order demonstrates that petitioner is "the subject of a final order of removal" under the FSA. As indicated above, respondent filed the 2016 Reinstated Order in support of its renewed motion to dismiss. See ECF Nos. 18; 22; 24-1. The 2016 Reinstated Order includes a completed portion entitled "Decision, Order, and Officer's Certification" stating, inter alia, that a DHS officer "ha[s] determined that the above named alien [petitioner] is subject to removal through the reinstatement of the prior order[.]" Another portion of the document, which provides notice to the noncitizen of the decision to reinstate the removal order and an opportunity to "make a statement contesting this determination," is incomplete. Accordingly, it does not appear that the order was served on petitioner in 2016. As explained below, while this means that the 2016 Reinstated Order was not initially "final," it has apparently become final through the events of this litigation.

The court begins by reviewing its reasoning at an earlier stage of this case, which continues to apply. At that point, respondent's only evidence concerning an order of removal against petitioner consisted of a declaration from a paralegal specialist who stated, "ICE Authorities have … provided Petitioner's final order of removal, which I have reviewed and which I understand has been forwarded by counsel to FCI Herlong to be filed in Petitioner's central file and provided to Petitioner." ECF No. 11-1 at 3. However, at the time, "[t]here [was] no information about when and under what authority the final order of removal was issued." ECF

No. 14 at 6.  On this background, the court reasoned as follows:

> It remains unclear whether petitioner "*is* the subject of a final order of removal," 18 U.S.C. § 3632(d)(4)(E)(i) (emphasis added), and is therefore ineligible for FSA time credits.  The undersigned has no doubt that at some point ICE executed a final order of removal against petitioner.  The paralegal specialist notes that ICE provided "Petitioner's final order of removal" and the factual basis for Petitioner's guilty plea admits he was "previously deported."  See United States v. Rodriguez-Garcia, No. 1:16-cr-00067-LJO-SKO-1, ECF No. 17 at 12.  However, § 3632(d)(4)(E)(i) uses the present tense "is" to refer to an individual "subject to a final order of removal."  This phrase seemingly refers to an order of removal that can presently be executed, not some previous order of removal that was already executed.
>
> ICE lacks the legal authority to subject an individual to deportation based on the same removal order more than once.  See Morales-Izquierdo v. Gonzales, 486 F.3d 484, 487 (9th Cir. 2007) (en banc) ("When an alien subject to removal leaves the country, the removal order is deemed to be executed.  If the alien reenters the country illegally, the order may not be executed against him again unless it has been 'reinstated' by an authorized official.").  Rather, in that circumstance, ICE may issue a unique "reinstated removal order."  A reinstated removal order can be issued without a hearing, but nonetheless requires that certain procedures be followed, including affording the targeted individual an opportunity to petition a court of appeals for review of the reinstated removal order and to claim a fear of persecution or torture.  See 8 C.F.R. § 241.8(e).  There is nothing in the record to suggest that ICE has reinstated petitioner's removal order or undertaken some other legal process that led to a new order of removal.  The reference to "petitioner's final order of removal" could very well involve a final order of removal that was executed years ago.

ECF No. 14 at 6-7

Respondent has now shown that petitioner is the subject of a reinstated order of removal. The dispositive question then becomes whether that reinstated order of removal is "final."  The FSA does not define finality, but broadly defines a "final order of removal" as one made pursuant to "all laws, conventions, and treaties of the United States relating to the immigration, exclusion, deportation, expulsion, or removal of aliens."[4]  See 18 U.S.C. § 3632(d)(4)(E)(i) (incorporating that definition from 8 U.S.C. § 1101(a)(17)).  The court accordingly looks to how final orders of removal are understood within the broader framework of immigration laws.

---

[4] The FSA does not contain other textual clues about how to interpret finality in this context. The only other provision specific to immigration requires the Attorney General and Secretary of DHS to "ensure that any alien" who is subject to inadmissibility or deportability under the INA and "who seeks to earn time credits are subject to proceedings described in section 238(a)" of the INA "at a date as early as practicable during the prisoner's incarceration."  See 18 U.S.C. § 3632(d)(4)(E)(ii).  Section 238(a) provides for the issuance of final administrative removal orders against undocumented non-citizens who have been convicted of certain crimes.

The Supreme Court recently decided when a final administrative removal order ("FARO")—which, like a reinstated order of removal, allows for an immigration officer to order and execute removal without a hearing—becomes "final." For noncitizens subject to removal hearings before immigration judges, a removal order becomes "final at the earlier of two points: (1) 'a determination by the Board of Immigration Appeals [("BIA")] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to' petition the BIA for review of the order." Riley v. Bondi, 145 S. Ct. 2190, __ (2025) (quoting 8 U.S.C. § 1101(a)(47)(B)). Recognizing that a noncitizen cannot appeal a FARO to the BIA, the Supreme Court held that a FARO becomes final as soon as it is issued: "Because an alien in streamlined removal proceedings cannot seek review of his FARO before an [immigration judge] or the BIA, the period to seek review 'expir[es]' as soon as the FARO is issued—meaning that *the order becomes final immediately upon issuance*." Riley v. Bondi, 145 S. Ct. 2190, __ (2025) (emphasis added).[5] While Riley concerned FAROs and not reinstated removal orders, the Ninth Circuit Court of Appeals has "repeatedly" held that the same statute Riley construed in defining a "final order of removal," 8 U.S.C. § 1252, also covers "a final reinstatement order." Vega-Anguiano v. Barr, 982 F.3d 542, 545 (9th Cir. 2019). Accordingly, the court finds that a reinstated order of removal, like a FARO, becomes final immediately upon issuance.

      The court cannot conclude that petitioner's reinstated removal order "issued" and became final on April 25, 2016 when it was signed by a DHS officer. That is because there is no evidence that ICE served the reinstated removal order on petitioner. DHS regulations concerning reinstatement expressly require the officer who "determines that an alien is subject to removal

---

[5] The issue in Riley was whether Riley petitioned for review within the 30-day timeline after his removal order became final, as required by 8 U.S.C. § 1252(a) and (b). DHS issued Riley's FARO on January 26, 2021, directing his deportation to Jamaica. Riley did not petition for review of the FARO, but instead claimed he would be tortured in Jamaica. DHS referred that claim to an immigration judge. An immigration judge granted Riley relief based on his fear of torture before the BIA reversed. Only then did Riley petition for review before the Fourth Circuit Court of Appeals. The Fourth Circuit found that the final order of removal in Riley's case was the FARO and not the BIA's later denial of his torture claim. The Fourth Circuit accordingly held that Riley had not petitioned for review within the 30-day deadline to seek review of a final removal order and that his untimely appeal must be dismissed. The Supreme Court affirmed.

under this section to "provide the alien with written notice of his or her determination" in order to allow the noncitizen "to make a written or oral statement contesting the determination." 8 C.F.R. § 241.8(b). Formal notice is also a prerequisite for the noncitizen to be able to petition for review of a "final order of removal" within 30 days after such order becomes final. 8 U.S.C. § 1252(a), (b). It cannot be that petitioner's 2016 Reinstated Order became final, with the 30-day timeline for him to petition for review of that order expiring long ago, despite the absence of notice. See Villegas de la Paz v. Holder, 640 F.3d 650, 654 (6th Cir. 2010) (rejecting argument that timeline to petition for review of reinstatement order ran while government "withh[eld] it from the affected alien for seven months" as "that kind of ball-hiding to prevent review" would be "the kind of perversion we found repellant" in other cases); Villalobos-Arellano v. Ashcroft, 123 Fed. Appx. 790, 791 (9th Cir. 2005) ("[T]here is no evidence in the record that the INS complied with its own regulations and provided adequate notice of the reinstatement of Villalobos' removal order. At the very least, as Villalobos was in criminal custody when the INS issued a notice of intent to reinstate his prior removal order, the INS should have served notice upon the person in charge of the penal institution where Villalobos was confined."); Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (noting that most basic aspects of due process are notice and an opportunity to be heard). The court accordingly finds that petitioner's reinstated order of removal cannot be deemed to have "issued" and become final in 2016.

However, the reinstated order of removal was apparently served on petitioner in or around July 2024.[6] In support of respondent's original motion to dismiss, in a filing dated July 25, 2024, a BOP paralegal specialist represented an "underst[anding]" that "Petitioner's final order of removal … has been forwarded by counsel to FCI Herlong to be filed in Petitioner's central file and provided to Petitioner." ECF No. 11-1 at 3. While it is not perfectly clear which "final order of removal" was "provided" to petitioner at that time, it thus appears that petitioner had notice of the reinstated removal order in or around July 2024. Petitioner has not contested the representation that he received the order of removal at that time. On this record, the undersigned

---

[6] Respondent later represented specifically that the reinstated order of removal and other documents were served on petitioner in June 2025. ECF No. 22.

finds that petitioner's 2016 Reinstated Order may be deemed final as of his receipt of that order in or around July 2024.[7]

Petitioner asserts in his petition that he had earned 365 days of time credits under the FSA. Given his good-time-credit release date of November 23, 2025, application of 365 days of FSA credits would have resulted in a release date of November 23, 2024.  But petitioner's order of removal had apparently already become final—in or around July 2024—before he could have applied those credits for an early release on November 23, 2024.  Given that the final order of removal preceded the application date of the FSA credits, petitioner is not eligible to apply those FSA credits and accordingly is not eligible for habeas relief on the record before the court.  See Bailon v. Birkholz, No. CV 23-8606 SB, 2024 WL 2160917, at *2 (C.D. Cal. April 5, 2024) ("Here, the Final Order of Removal was issued on September 16, 2022, long before the date Petitioner contends he was able to be released—December 14, 2023. As such, he never had sufficient earned time credits to be able to apply them towards early release."), adopted by 2024 WL 2158235 (May 13, 2024).[8]  For these reasons, the undersigned recommends denying petitioner's § 2241 application.

### IV.   Plain Language Summary for Party Proceeding Without a Lawyer

Since petitioner is representing himself in this case, the court wants to make sure that the words of this order are understood.  The following information is meant to explain this order in plain English and is not intended as legal advice.

After reviewing the decision to reinstate your prior order of removal, the undersigned recommends denying your habeas petition because you are not eligible to have FSA credits applied to your sentence.

---

[7] The undersigned recognizes that there is no record of DHS itself providing petitioner with such notice, which may have significance to the technical finality of the reinstated removal order under the INA and its implementing regulations.  However, given that petitioner has not contested the renewed motion to dismiss, the undersigned will not address that issue.

[8] The court accordingly need not take up the question of whether petitioner would be entitled to application of FSA credits had his removal order become final only after the application date of his credits.  Cf. Martin v. Phillips, 2025 WL 732829, *5 (E.D. Cal. March 7, 2025) ("[T]he Court agrees with other district courts in this circuit that the language in section 3632(d)(4)(C) [concerning application of earned credits] is mandatory.").

If you disagree with this recommendation, you have 21 days to explain why it is not the correct result. Label your explanation "Objections to Magistrate Judge's Findings and Recommendations." The district court judge assigned to your case will review the matter and issue a final decision.

Accordingly, IT IS RECOMMENDED that:

1. Petitioner's § 2241 application (ECF No. 1) be denied on the merits.

2. Respondent's motion to dismiss (ECF No. 11), construed as an answer, be deemed resolved for the reasons indicated herein.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 21 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 5, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE